# IN THE SUPREME COURT OF TEXAS

══════════

No. 18-0703

══════════

LANE THOMAS SHINOGLE, PETITIONER,

v.

BENJAMIN WHITLOCK AND BRIANNA WHITLOCK, RESPONDENTS

══════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

══════════════════════════════════════════

**PER CURIAM**

Section 128.053 of the Texas Civil Practice and Remedies Code requires a claimant suing a sport shooting range to serve an expert report on each party within 90 days after the original petition was filed unless the deadline is "extended by written agreement of the affected parties." *See* TEX. CIV. PRAC. & REM. CODE § 128.053(a). Failure to comply with section 128.053's mandate gives a defendant as to whom an expert report has not been served the right to dismissal with prejudice. *Id.* § 128.053(b)(2).

This case presents two principal issues: (1) whether an agreed scheduling order setting expert report deadlines, with no reference to section 128.053, extended the statutory deadline to serve an expert report, and (2) whether the claimants' failure to timely serve an expert report entitled the shooting range's employee to seek dismissal. We hold that an agreed order silent about extending the statutory deadline does not constitute an agreement to extend the deadline, and noncompliance

with the statute entitled the employee to dismissal with prejudice as an implicated defendant whose conduct was required to be addressed in an expert report. *Id.* § 128.053(a), (b)(2). We therefore affirm the court of appeals' judgment in part and reverse and render in part.

On December 17, 2016, Benjamin Whitlock brought a loaded .22 caliber rifle to the Alpine Industries, Inc. shooting range in Fort Worth, Texas. Lane Shinogle, Alpine's Range Safety Officer, greeted Whitlock at the entrance gate. As required, Whitlock handed his weapon to Shinogle for a pre-entrance safety inspection. While Shinogle had possession of the rifle, the gun discharged and shot Whitlock in the leg. Whitlock suffered severe injuries that required extensive medical treatment.

On February 24, 2017, Whitlock and his wife sued Alpine and Shinogle, alleging various negligence theories. The Whitlocks' suit was governed by level-three discovery, so the parties submitted an agreed scheduling order, which the trial court approved on April 18, 2017. The scheduling order stated that "[a] party seeking affirmative relief shall designate experts and must provide reports [by February 12, 2018] (expert reports are not required for treating doctors)." The order neither specifically referenced section 128.053 nor mentioned an extension of the 90-day expert report deadline.

On June 2, 2017, more than 90 days after the Whitlocks filed suit, Alpine and Shinogle filed a motion to dismiss. Alpine and Shinogle argued the Whitlocks were required to designate and serve expert reports on all parties in accordance with section 128.053's 90-day deadline. Because the Whitlocks did not do so, Alpine and Shinogle sought a dismissal with prejudice under section 128.053(b)(2). The Whitlocks did not dispute that section 128.053 governs their suit, but they

2

argued the agreed scheduling order was the parties' written agreement to extend section 128.053's deadline.

The trial court denied Alpine and Shinogle's dismissal motion after a non-evidentiary hearing. The trial court ruled that the agreed scheduling order effectively extended the Whitlocks' section 128.053 deadline. But on the issue of whether an explicit reference to section 128.053 or its deadline is required to constitute an extension agreement, the trial court granted a permissive interlocutory appeal, agreeing with Alpine and Shinogle that it is "a controlling question of law as to which there is a substantial ground for difference of opinion." *See* TEX. CIV. PRAC. & REM. CODE § 51.014(d) (permissive interlocutory appeal).

The court of appeals accepted the appeal, *id.* § 51.014(f), and reversed, holding the agreed scheduling order did not extend the statutory deadline because the order did not specifically reference section 128.053. 554 S.W.3d 174, 187 (Tex. App.—Fort Worth 2018). In so holding, the court relied on *Crosstex Energy Services, L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384 (Tex. 2014), and *Spectrum Healthcare Resources, Inc. v. McDaniel*, 306 S.W.3d 249 (Tex. 2010), both of which involved statutes with similar expert report deadlines. Because the parties' agreed order did not refer to section 128.053, the court held the order did not extend the deadline to serve a compliant expert report. *Id.* The appeals court dismissed all the claims against Alpine, but allowed the Whitlocks' suit against Shinogle to proceed on the basis that section 128.053(b)(2) does not apply to a shooting range's employees. *Id.* at 187-88.

On petition for review, the parties join issue as to whether defendants like Shinogle may seek dismissal under section 128.053(b)(2). In a conditional cross petition, the Whitlocks also argue that

3

the agreed scheduling order was effective to extend section 128.053's deadline and that our decisions in *Crosstex* and *Spectrum Healthcare* are distinguishable on that point.

The issues the parties raise are intertwined, so we address both. We affirm the court of appeals' judgment dismissing the suit against Alpine because the agreed scheduling order did not extend the Whitlocks' deadline to serve the expert report section 128.053 requires. But we reverse the judgment as to Shinogle because he is entitled to dismissal with prejudice under section 128.053(b)(2) as an implicated defendant whose conduct was required to be addressed in an expert report.

Section 128.053 of the Civil Practice and Remedies Code requires a claimant in a suit against a sport shooting range to serve each party in the litigation with an expert report. TEX. CIV. PRAC. & REM. CODE § 128.053(a). The report is due within 90 days after the claimant files the original petition, but "[t]he date for serving the report may be extended by written agreement of the affected parties." *Id*. The Legislature creates "threshold report requirement[s] as a substantive hurdle," and claimants must satisfy those requirements before their suits may proceed. *Spectrum Healthcare*, 306 S.W.3d at 253.

Section 128.053 is a relatively new statute, passed in 2011, and we have not yet considered the type of written agreement required to extend the statutory deadline. But we have resolved the same question in cases involving similar expert report statutes: sections 74.351 and 150.002 of the Civil Practice and Remedies Code. *See Crosstex*, 430 S.W.3d at 395; *Spectrum Healthcare*, 306 S.W.3d at 249. Our precedent construing these analogous statutes is instructive.

4

*Spectrum Healthcare* involved a similarly worded written-agreement exception to a statutory expert report deadline. *See* 306 S.W.3d at 253 ("The date for serving the report may be extended by written agreement of the affected parties." (quoting TEX. CIV. PRAC. & REM. CODE § 74.351(a))). At issue was "whether a generic docket control order in a healthcare liability lawsuit that [made] no reference to the section 74.351 threshold expert report requirement" was sufficient to extend its 120-day deadline. *Id.* We held it was not. *Id.* We observed that the Legislature enacted chapter 74's expert report requirement to target frivolous medical malpractice claims for expeditious termination, so when parties intend to alter the legislatively mandated deadline, the agreed scheduling order "must make a clear acknowledgment of their intent to do so." *Id.* Accordingly, "to extend the section 74.351 threshold expert report deadline, the order must explicitly indicate the parties' intention to extend the deadline and reference that specific deadline." *Id.* at 254.

Four years later, in *Crosstex*, we addressed whether a Rule 11 agreement and docket control order governing discovery extended a statutory deadline for filing an expert's certificate of merit. 430 S.W.3d at 395. We relied on *Spectrum Healthcare* in holding that the parties' discovery "agreement did not operate to postpone [section 150.002's] filing requirement." *Id.* We reiterated that "an agreed order dealing with expert report deadlines does not impact" separate statutory deadlines for an expert's threshold certification of merit "*unless* [the statute] is specifically mentioned in the agreed order." *Id.*

The rationale in *Spectrum Healthcare* and *Crosstex* applies equally to the present case. Like sections 74.351 and 150.002, section 128.053 is a threshold expert report requirement that must be satisfied before a claimant may proceed with a lawsuit. *See* TEX. CIV. PRAC. & REM. CODE

5

§ 128.053(a). And like *Spectrum Healthcare* and *Crosstex*, the parties' agreed scheduling order did not explicitly reference section 128.053 or its 90-day expert report deadline. Instead, the scheduling order set a general expert report and designation deadline, which is insufficient to meet the explicit reference standard applied in *Spectrum Healthcare* and *Crosstex*.

Because the Whitlocks did not timely serve an expert report, subsection (b)(2) requires dismissal with prejudice on the motion of an affected defendant. *See id.* § 128.053(b)(2). The right to dismissal with prejudice is not in question here; the only issue is whether Shinogle can claim it. This is a question of statutory construction we consider *de novo*. *Pedernal Energy, LLC v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 491 (Tex. 2017).

Our primary goal in construing a statute is to give effect to the Legislature's intent. *Id*. We take statutes as we find them and construe them "so that no part is surplusage, but so that each word has meaning." *Id*. "Additionally, we must always consider the statute as a whole rather than its isolated provisions." *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001). And we must "not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone." *Id*. With these principles in mind, we "begin our analysis with [section 128.053's] words and then consider the apparent meaning of those words within their context." *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014) (plurality op.) (footnote omitted).

By its plain terms, section 128.053 applies to "a suit against a sport shooting range, an owner or operator of a sport shooting range, or the owner of real property on which a sport shooting range is operated[.]" TEX. CIV. PRAC. & REM. CODE § 128.053(a). In such cases, the "claimant" must

6

"serve on each party" an expert report and "a curriculum vitae of each expert listed in the report for *each defendant* against whom a claim is asserted." *Id.* § 128.053(a) (emphasis added). After the report is served, "*[e]ach defendant* whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report" within a specified time frame. *Id.* (emphasis added).

Subsection 128.053(b) lists the consequences for failing to serve an expert report on each defendant within 90 days of filing suit. "If, as to a *defendant*, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the *affected defendant* shall . . . enter an order that: . . . dismisses the claim with prejudice with respect to the *affected defendant*." *Id.* § 128.053(b)(2) (emphasis added).

The Whitlocks argue, and the court of appeals agreed, that Shinogle could not seek dismissal under section 128.053(b)(2) because the statute does not use the word "employee." While it is true the statute does not use that term, the statute nonetheless applies to a "defendant whose conduct is implicated in a report[.]" *Id.* § 128.053(a). Given the facts and claims here, Shinogle squarely fits within the meaning of "defendant" under section 128.053.

Chapter 128 requires expert testimony that a sport shooting range, the owner or operator of a range, or the owner of property on which a range is operated deviated from the applicable standard of care. *See id.* § 128.052(c). The Whitlocks argue that Alpine—a sport shooting range—is liable for Shinogle's actions under the doctrine of respondeat superior and liable for negligently training and supervising him. Given these allegations, the statute required the Whitlocks to serve an expert report addressing the standard of care applicable to Shinogle as an employee of Alpine and how he

departed from that standard, and because Shinogle is an implicated defendant, the Whitlocks were required to serve the report on him.  *See id.* §§ 128.052(c), .053(a).

Our analysis is supported by the definition of "expert report" in section 128.051(4).  An expert report for Chapter 128 purposes is "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care for operation of a sport shooting range, the manner in which a *defendant* failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed."  *Id.* § 128.051(4) (emphasis added).  Again, we note the Legislature chose the word "defendant" in its definition of expert report and did not expressly limit the expert report's content to addressing only the actions of the shooting range itself.

Construing Chapter 128 as a whole, and "giving effect to every word, clause, and sentence" within the statute, we see no reason why the Legislature would require a claimant to address a *defendant*'s conduct in an expert report, allow an implicated *defendant* to challenge the report, but then deny that very same *defendant* the right to seek a dismissal if the claimant fails to timely serve the *defendant* with an expert report.  *In re Office of Attorney Gen.*, 422 S.W.3d 623, 629 (Tex. 2013).  To read the statute the way the Whitlocks suggest would render the word "defendant" "meaningless or mere surplusage."  *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016).  This, we will not do.

Construing the statute as enacted, we hold that Shinogle is an implicated defendant in the Whitlocks' suit against Alpine, and the Whitlocks were required to serve Shinogle with an expert report within 90 days of filing suit.  Shinogle is entitled to dismissal under section 128.053(b)(2)

8

because the agreed discovery order did not extend the 90-day deadline and the Whitlocks failed to timely serve their expert report.

Accordingly, without hearing oral argument, we reverse in part and affirm in part the court of appeals' judgment and render judgment dismissing the claims against Shinogle and Alpine with prejudice. *See* TEX. R. APP. P. 59.1.

**OPINION DELIVERED:** February 21, 2020